IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WILLIAM GORDON SHERBUTT,

       Plaintiff,

v.                                               CIV 15-0394 KBM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

       Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiff's Motion to Remand or

Reverse  (*Doc. 17)*, filed September 29, 2015. Pursuant to 28 U.S.C. § 636(c) and

Federal Rule of Civil Procedure 73(b), the parties have consented to have me serve as

the presiding judge and enter final judgment. *Doc. 15.* Having reviewed the parties'

submissions, the relevant law, and the relevant portions of the Administrative Record,

the Court finds the motion without merit and will deny Plaintiff's Motion.

### I.    Procedural History

On August 3, 2011, Plaintiff filed applications with the Social Security

Administration for Disability Insurance Benefits ("DIB") and Supplemental Security

Income ("SSI") under Title II and XVI of the Social Security Act. *AR* at 214-223.[1] Plaintiff

alleged a disability onset date of March 1, 2008, and the disabling condition of chronic

obstructive pulmonary disease ("COPD"). *Id.* at 245. The agency denied Plaintiff's

---

[1] Documents 16-1 through 16-13 comprise the sealed Administrative Record ("*AR*"). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

claims initially and upon reconsideration, and Plaintiff requested a hearing. *Id.* at 108-147, 165-171.

After a *de novo* hearing, Administrative Law Judge Myriam Fernandez Rice ("the ALJ") issued an unfavorable decision on August 20, 2013. *Id.* at 63-73. Plaintiff submitted a Request for Review of the ALJ's Decision to the Appeals Council, which the Council declined on March 10, 2015. *Id.* at 1-7. As such, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). This Court has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner must use a sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *see Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

At Step One of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant time period. *AR* at 65. At Step Two, she determined that Plaintiff had the severe impairments of "chronic obstructive pulmonary disease ('COPD'); emphysema; sleep apnea; and obesity." *Id.* At Step Three, she concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the regulatory "listings." *Id.* at 67-68.

When a plaintiff does not meet a listed impairment the ALJ must determine his residual functional capacity ("RFC"). *Hendron v. Colvin*, 767 F.3d 951, 953 (10th Cir. 2014). "RFC is a multidimensional description of the work-related abilities [a plaintiff] retain[s] in spite of [his] medical impairments." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1). The ALJ in this case determined that Plaintiff maintained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a); however, Plaintiff is limited to "no climbing ladders, ropes or scaffolds; to occasionally climbing ramps or stairs; to avoiding even moderate exposure to temperature extremes; to avoid even moderate exposure to environmental irritants such as fumes, odors, gases, dusts, or chemicals; and to avoiding poor ventilation." *AR* at 68. Employing this RFC at Steps Four and Five, the ALJ determined that Plaintiff is unable to perform his past relevant work as a machine operator, material handler, or a supervisor in a rubber injection factory. However, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id.* at 71-72. Accordingly, the ALJ determined that Plaintiff was not disabled from his alleged onset date through the date of her decision. *Id.* at 72.

## II.    Legal Standard

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). Substantial evidence is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S.

389, 401 (1971). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* However, evidence is not substantial if it is overwhelmed by other evidence or is actually a mere conclusion. *Slocum v. Sec'y of Health & Human Services*, 9 F.3d 117 (10th Cir. 1993). The Court may not reweigh the evidence, substituting its own discretion for that of the Commissioner. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

**III.    Analysis**

### A) The ALJ Adequately Developed the Record

Plaintiff contends that the ALJ erred in failing to develop the record in two ways.

Plaintiff first argues that the record contains no information specifying what impact his severe impairments have on his ability to perform work-related functions, and that the ALJ should have ordered an in-person consultative examination because "[t]here is nothing in the medical records reflecting [his] ability to perform 'sustained work related activities in an ordinary work setting on a regular and continuing basis.'" *Doc. 18* at 6 (citing SSR 96-8p, 1996 WL 374184 at *7).

The Commissioner "has broad latitude in ordering consultative examinations." *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) (citing *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir.1990)). It is the ALJ's prerogative under this broad latitude to determine whether a consultative examination would be "necessary or helpful" in a given case. *See Lundgren v. Colvin*, 512 F. App'x 875, 879 (10th Cir. 2013) (unpublished) (citation omitted). Moreover, there was no request for a consultative examination in this case at the administrative level. Therefore, the question is whether the need for a consultative examination was clearly established in the record.

*Hawkins*, 113 F.3d at 1168 ("In the absence of such a request by counsel, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record."). "The pertinent inquiry is 'whether the record contained sufficient medical evidence for the Secretary to make an informed decision as to [claimant's] alleged . . . impairment,' without the need for a consultative . . . examination." *Torres v. Sec'y of U.S. Dep't of Health & Human Servs.*, 17 F.3d 1437 at *3 (10th Cir. 1994) (unpublished) (citation omitted). The need for a consultative examination is established in the record where there is a direct conflict in the medical evidence requiring resolution, where the medical evidence in the record is inconclusive, or where additional tests are needed to explain a diagnosis contained in the record. *Hawkins*, 113 F.3d at 1166; *see also* 20 C.F.R. § 416.919(a) (describing the situations that may require a consultative examination).

Plaintiff relies upon *Thompson v. Sullivan*, 987 F.2d 1482 (10th Cir. 1993), for the proposition that the ALJ should have ordered an in-person functional capacity evaluation. In *Thompson*, the ALJ did not order a consultative examination to evaluate the effect of the plaintiff's impairments on her ability to work. *Id.* at 1485. Instead, in finding that the plaintiff could perform a full-range of sedentary work the ALJ relied upon the absence of contraindication in the medical records. *Id.* at 1491. The Tenth Circuit held this to be error, explaining that the ALJ, upon "finding no evidence upon which to make a finding as to RFC, should have exercised his discretionary power to order a consultative examination" to determine the plaintiff's capabilities in light of her impairments. *Id.*

As Plaintiff admits, in contrast to *Thompson* there was a functional capacity determination made in this case. *Doc. 18* at 6. Dr. Green, who reviewed Plaintiff's medical records, stated that Plaintiff can occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand or walk about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday and was unlimited in his ability to push/pull "other than shown, for lift and/or carry." *AR* at 123. Dr. Green furthermore documented Plaintiff's postural limitations, finding that Plaintiff could only occasionally climb stairs, ladders, ropes, or scaffolds. He also documented Plaintiff's environmental limitations, finding that Plaintiff must avoid concentrated exposure to temperature extremes, heights, machinery, and pulmonary irritants such as fumes, odors, dust and gasses, and poor ventilation. *Id.* at 124-5. The ALJ accepted Dr. Green's findings as "consistent with the objective medical evidence and the nature and extent of the treatment prescribed[;]" however, the ALJ went a step further, finding that Plaintiff should be restricted to sedentary work (Dr. Green opined that Plaintiff could perform medium work) due to Plaintiff's COPD, "obesity and his testimony concerning his lifting limitations based on his medical impairments." *AR* at 71. As such, contrary to Plaintiff's position, there is substantial evidence in the record reflecting his ability to perform sustained work related activities in the ordinary work setting, and this evidence was relied upon by the ALJ. Plaintiff has cited to no authority requiring the ALJ to order an in-person consultative examination in these circumstances.

Moreover, Plaintiff points to nothing in the record that suggests that his COPD, emphysema, sleep apnea and obesity required further investigation before the ALJ could determine what functional limitations existed as a result of those conditions. *See*

6

*Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). As the Court noted in

*Thompson*, "[a] sedentary job is defined as one which involves sitting, but a certain

amount of walking and standing is often necessary to carry out job duties." *Thompson*,

987 F.2d at 1491 (citing 20 C.F.R. § 404.1567(a)). "Sitting should generally total

approximately 6 hours of an 8-hour workday." *Id.* (citing SSR 83-10). In contrast to

*Thompson*, where there was absolutely no evidence to support the ALJ's conclusion

that the Plaintiff maintained the capacity to perform sedentary work, such evidence

exists in this case. Dr. Green's evaluation of Plaintiff provided substantial evidence for

the ALJ to rely upon in concluding that he can perform sedentary work with restrictions,

as Dr. Green found that Plaintiff can both stand walk and sit for six hours in an eight-

hour workday. *See Lundgren v. Colvin*, 512 F. App'x 875, 878 (10th Cir. 2013)

(unpublished) (holding that the ALJ did not err in refusing to order a consultative

examination where other evidence in the record supported his conclusion that the

limitations at issue were not disabling). Given the presence of this evidence, the ALJ

acted within the broad latitude afforded to him to decide whether a consultative

examination was necessary or helpful.

     As to Plaintiff's second argument, Plaintiff maintains that the ALJ failed to

adequately develop the record concerning his anxiety. However, there are few

references to Plaintiff's anxiety in the record, and Plaintiff's counsel never indicated that

any records were missing from the application. When Plaintiff's attorney asked him if he

suffers from anxiety, Plaintiff responded "little bit." *AR* at 89. When asked if he had ever

been diagnosed with anxiety, Plaintiff reported that he had, when he was living in

Michigan, and had been prescribed Xanax. *Id.* When asked why he was no longer

taking Xanax, Plaintiff responded that he could not afford it because he does not have insurance. *Id.* Plaintiff testified that breathing triggers his anxiety and that he gets panic attacks and is afraid that he is going to quit breathing. *Id.* Beyond Plaintiff's testimony, he mentioned to one provider that he had been on medication for anxiety before his insurance ran out. *See AR* at 31. Otherwise, anxiety was reported as an associated *symptom* of Plaintiff's COPD/asthma symptoms in two records. *Id.* at 333, 411.

The ALJ found Plaintiff's anxiety to be a nonsevere impairment at step two, after performing a psychiatric review technique and determining that Plaintiff's anxiety imposes no more than a mild limitation in Plaintiff's activities of daily living, social functioning, and concentration, persistence and pace, and finding no episodes of decompensation. *AR* at 66-67. The ALJ based these conclusions upon Plaintiff's function report and the lack of treatment or diagnosis by a mental health professional. *Id.* at 66 ("While the claimant testified that he took Xanax previously and that his breathing was affected by panic attacks, there is no evidence of treatment with or diagnosis by any mental health professional."). Plaintiff argues that "the ALJ made no effort to obtain medical tests to support the limiting effects of the mental condition, nor questioned the Claimant about the limiting effects of his anxiety at the hearing, and such is a reversible error." *Doc. 18* at 7.

Plaintiff's argument is unpersuasive for two reasons. First, there is no evidence of a diagnosis of or treatment for anxiety in the record.

> [T]he claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists. When the claimant has satisfied his or her burden in that regard, it then, and only then, becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment.

*Hawkins*, 113 F.3d at 1167; *see also Wall v. Astrue*, 561 F.3d 1048, 1063 (10th Cir. 2009). While Plaintiff testified that he has anxiety and had previously received medication for it, the record before the ALJ contained no diagnosis or treatment for anxiety, and certainly no indication that Plaintiff's anxiety limited his ability to work. "Isolated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a nonexertional impairment." *Hawkins*, 113 F.3d at 1167-68 (citation omitted); *see also Wendelin v. Astrue*, 366 F. App'x 899, 904 (10th Cir. 2010) (declining to remand where there was no medical evidence indicating the plaintiff's complaints limited her functioning). Neither Plaintiff nor his counsel argued that Plaintiff's anxiety contributed to his inability to work at the hearing before the ALJ. *See Wall*, 561 F.3d at 1063. In fact, when asked what conditions he was asking the ALJ to consider Plaintiff only mentioned COPD and emphysema. *AR* at 82. As such, the ALJ reasonably assumed that Plaintiff's anxiety had no bearing on the question of his alleged disability, and did not err in failing to further develop the record. *See Wall*, 561 F.3d at 1063; *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir.2008) (declining to remand where claimant's counsel "made no effort to point out the existence or relevance of [omitted medical evidence] to the ALJ").

Moreover, Plaintiff's counsel never asked the ALJ to develop the record as to his anxiety. Plaintiff relies upon *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996). In *Carter*, the *pro se* plaintiff produced to the ALJ an evaluation by a doctor in which she was diagnosed with depression. *Id.* at 1021. The ALJ rejected this diagnosis because it was unsupported by any testing or even a clinical interview. *Id.* at 1022. The Tenth Circuit held this rejection to be in error, finding that the existence of the diagnosis

9

required the ALJ to develop the record concerning the plaintiff's depression. *Id.* There was also testimony by the plaintiff at the hearing indicating she had seen a psychiatrist for job stress and had been given two weeks of disability as a result of this consultation. *Id.* Nonetheless, the ALJ did not inquire further, request any of the records mentioned by the plaintiff, or order a consultative examination. *Id.*

*Carter* is distinguishable from this case in one significant aspect – the plaintiff was not represented by counsel. Here, on the other hand, Plaintiff was.

> [W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored. Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development.

*Cowan v. Astrue*, 552 F.3d 1182, 1188 (10th Cir. 2008) (quoting *Hawkins*, 113 F.3d at 1167-68). Thus, "[a]lthough the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record – indeed, to exhort the ALJ that the case is ready for decision – and later fault the ALJ for not performing a more exhaustive investigation." *Maes*, 522 F.3d at 1097. As such, courts in the Tenth Circuit "will not ordinarily reverse or remand for failure to develop the record when a claimant is represented by counsel who affirmatively submits to the ALJ that the record is complete." *Id.*

When asked if the administrative record was complete Plaintiff's counsel indicated that it was. *AR* at 81. Plaintiff's counsel did not request that other existing medical records be obtained, ask for a consultative mental examination to be performed, or seek any further development of the record. In these circumstances, the Court cannot fault the ALJ for not further developing the record as to Plaintiff's anxiety.

*Cowan*, 552 F.3d at 1188 ("Here, there was no request from Mr. Cowan's counsel for any other existing medical records to be obtained, for a consultative mental examination to be performed, or for any other development of the record to be undertaken.").

### B) The ALJ's credibility findings are closely and affirmatively linked to record evidence, and she did not err in determining that Plaintiff maintains the RFC to perform sedentary work with restrictions.

Plaintiff argues that the ALJ erred in determining that he could perform sedentary work as limited by his RFC because her credibility determinations were not closely and affirmatively linked to substantial evidence. *Doc. 18* at 8. It is well-established that "the ALJ's credibility and RFC determinations are inherently intertwined." *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009). However, "[c]redibility determinations are peculiarly the province of the finder of fact and [the Court] will not upset such determinations when supported by substantial evidence." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). The Court is not permitted to reweigh evidence, second guess, or substitute its judgment for that of the ALJ. *Wall*, 561 F.3d at 1070. Rather, this Court looks only to whether the ALJ's credibility findings are "closely and affirmatively linked" to record evidence. *Id.*

> Factors the ALJ may consider in assessing a claimant's complaints include 'the levels of [his] medication and its effectiveness, . . . the frequency of [his] medical contacts, the nature of [his] daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence.'

*Qualls v. Astrue*, 428 F. App'x 841, 845 (10th Cir. 2011) (quoting *Kepler,* 68 F.3d at 391); *see also* 20 C.F.R. § 404.1529(c)(3) (listing seven factors relevant to claimant's symptoms that the ALJ will consider); SSR 96–7p, 1996 WL 374186, at *3 (same). This

inquiry is conducted "via a meticulous examination of the record as a whole[,]" *id.* at 1067, which includes examining "anything that may undercut or detract from the ALJ's findings[.]" *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

After considering the evidence of record, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible[.]" *AR* at 69. In determining Plaintiff's credibility, the ALJ set forth the relevant standard, SSR 96-7p, and then spent the next several pages identifying evidence from the record that supported her credibility determination. This procedure was proper and shows that the ALJ's credibility determinations were supported by substantial evidence. *See Poppa*, 569 F.3d at 1171 (affirming where the ALJ "set forth the factors from SSR 96–7p and then spent the next several pages identifying evidence from the record that related to the factors and supported his credibility determination.").

The ALJ first summarized Plaintiff's testimony. Plaintiff testified that he is always short of breath. *AR* at 82. According to Plaintiff, his shortness of breath is brought on by walking, lifting anything heavy, carrying anything a distance, and by environmental factors, such as steam in the shower. *Id.* Plaintiff quit smoking three days prior to the hearing, but had been smoking 20 cigarettes a day prior to quitting. *Id.* Plaintiff reported that he shops for groceries but can only carry a couple of bags at a time or he loses his breath. *Id.* at 84. The maximum amount of weight that Plaintiff can lift is about 20 pounds, and he can carry this amount of weight for about 20 feet until he has to set it down. *Id.* at 85. Plaintiff testified that he can sit for a couple of hours before his

breathing becomes obstructed. *Id.* at 86. He can walk for 70-80 feet before he begins to run out of breath. *Id.* However, Plaintiff is able to stand or lean without losing his breath. *Id.* at 87. Plaintiff does dishes, but has to take breaks. *Id.*

The ALJ next discussed Plaintiff's function report. *Id.* at 68-69. In his function report Plaintiff stated that he is always short of breath, has to sit down a lot to catch his breath, cannot lift a lot of weight, cannot move around very fast or go for long walks, and takes breathing treatments on a regular basis. *AR* at 265. Plaintiff reported that he has to sit down to get dressed and takes short showers because the steam makes it hard to breathe. *Id.* at 266. Plaintiff cannot stand long enough to prepare large meals but does prepare simple meals, and he reported that he can clean his house and can do laundry if he takes his time because it takes him "a while." *Id.* at 265-67. Plaintiff also reported that he goes outside three to eleven times a day, uses public transportation, and shops in stores for food, clothing and medication. *Id.* at 268. Plaintiff is able to handle his finances and enjoys reading, watching TV, and putting puzzles together. *Id.* at 269. While he is no longer able to play sports or hunt and says that he cannot attend as many social activities, Plaintiff spends time with others, talks to his friends and family on a daily basis, and attends church weekly. *Id.* at 269. Plaintiff reported that he can only walk one block without needing to stop and rest and stated that he can only lift 20 pounds or less, *id.* at 270, and environmental factors such as cold, wind, and humidity make it harder to breathe. *Id.* at 272.

The ALJ next "considered and gave weight to" a third-party function report filled out by Plaintiff's mother. *AR* at 69. Plaintiff's mother reported that he can do "light activities as able to and watches TV." *Id.* at 274. She reported that Plaintiff has no

problem with personal care, prepares simple meals, does the dishes, light cleaning and laundry, although sometimes he needs help completing these tasks. *Id.* at 276. She stated that Plaintiff goes outside "a couple of times a day for fresh air and to breathe better," shops for groceries, watches birds, does word puzzles, visits with friends and neighbors, and reads daily. *Id.* at 278. However, Plaintiff is unable to participate in most outdoor activities and can only walk 40-50 feet without resting. *Id.* at 279. Plaintiff also has difficulty lifting, squatting, bending, stating, reaching, walking, kneeling, talking and climbing stairs. *Id.* at 280. The ALJ concluded that Plaintiff's mother's function report reflects certain limitations, but "it also reflects that claimant performs many activities of daily living[,]" and did not support further restrictions than she found in formulating Plaintiff's RFC. *Id.* at 69.

The ALJ then discussed Plaintiff's medical treatment. *AR* at 69. Summarizing the records, the ALJ noted that Plaintiff had a history of breathing complaints with treatment by a pulmonologist and the use of inhalers and a nebulizer. *Id.* However, she also pointed out that "the records do not show any acute symptoms or limitations and no emergency room treatment relating to respiratory problems or chronic bronchitis or other respiratory infections." *Id.*; *see, e.g.*, *id.* at 343. She also noted Plaintiff's 30-year history of smoking. *Id.* at 69.

As discussed by the ALJ, while still in Michigan Plaintiff was referred to St. Clair Pulmonary and Critical Care, P.C. for shortness of breath over the preceding 20 years associated with wheezing on October 25, 2010. *AR* at 345. Dr. Reddy, the pulmonologist, diagnosed Plaintiff with: shortness of breath, most likely secondary to chronic obstructive pulmonary disease; possible asthma; likely obstructive sleep apnea;

and possible early cor pulmonale. *Id.* Dr. Reddy started Plaintiff on Combivent, referred Plaintiff for a pulmonary function test and sleep study and counseled him about quitting smoking. *Id.* at 346. A chest CT without contrast was performed on October 29, 2010, and indicated nonspecific reticulonodular prominence within the periphery of both lung fields. *Id.* at 341. Follow-up was recommended within approximately four to six months. *Id.*

Plaintiff followed-up with Dr. Reddy on November 17, 2010, still complaining of shortness of breath with wheezing. *Id.* at 366. Dr. Reddy reviewed Plaintiff's pulmonary function test and indicated that it "showed moderate ventilator impairment with a mixed obstructive and restrictive pattern." *Id.* Plaintiff was started on Qvar and his Combivent was continued. *Id.* A nebulizer was ordered and Plaintiff was told to follow-up in two to three weeks. *Id.* On December 9, 2010, Plaintiff reported for follow-up treatment, reporting mild asthma attacks. *Id.* at 333. It was noted that Plaintiff's asthma attacks are episodic and fluctuate in intensity and are exacerbated by allergens, dander, coughing, exertion, and smoke exposure. *Id.* Plaintiff was diagnosed with asthma but the medical provider indicated that he was "progressing as expected." *Id.* at 334-35. Plaintiff was started on Xolair. *Id.* at 335.

A sleep study was performed on January 10, 2011, "which resulted in an AHI of 3.7, not requiring CPAP." *AR* at 327. Plaintiff was diagnosed with periodic limb movement disorder and nocturnal hypoxemia (sleep apnea). *Id.* at 327. It was recommended that Plaintiff have an overnight pulse oximetry to assess for the possible need for nocturnal oxygen. *Id.* at 328. Plaintiff was encouraged to stop smoking and lose some weight. *Id.*

Plaintiff received no further treatment due to moving to New Mexico and, when contacted by the administration on November 7, 2011, confirmed that he had not seen a physician for his breathing impairment since February 2011 and had not had a pulmonary function test since November 2010. *AR* at 376. A consultative examination was ordered and Plaintiff underwent a pulmonary function study on November 10, 2011. *Id.* at 369. While Plaintiff's results were lower than predicted values, he exhibited no wheezing throughout the examination. *Id.*

On December 5, 2011, Plaintiff's medical records were reviewed by David Green, M.D., a state agency medical consultant. *AR* at 127. Dr. Green indicated that Plaintiff has certain exertional limitations and opined that Plaintiff was limited to carrying 50 pounds occasionally and 25 pounds frequently. *Id.* at 123. However, in determining Plaintiff's RFC Dr. Green indicated that Plaintiff can sit, stand and walk for 6 hours in an 8-hour work day. *Id.* Dr. Green limited Plaintiff to occasionally climbing ramps, stairs ladders, ropes and scaffolds, but stated that he could frequently balance, stoop, kneel, crouch and crawl. *Id.* at 124. Dr. Green further opined that Plaintiff should avoid concentrated exposure to temperature extremes, heights, machinery, and pulmonary irritants such as fumes, odors, dusts, gasses, and poor ventilation. *Id.* at 125. Overall, Dr. Green opined that Plaintiff can perform medium work with the noted restrictions. *Id.* at 126. The ALJ found Dr. Green's assessment to be "consistent with the objective medical evidence and the nature and extent of the treatment prescribed" but decided nonetheless to limit Plaintiff to sedentary work "due to the COPD and the obesity and his testimony concerning his lifting limitations based on his medical impairments." *Id.* at 71.

After discussing all of this evidence, the ALJ opined that while the record supports some physical limitations on Plaintiff's ability to work, his limitations are not work preclusive. *Id.* The Court's own review of the evidence confirms this conclusion. Plaintiff testified that he is unable to do much because of his breathing problems, but his and his mother's function reports indicate that he is able to complete many activities of daily living without assistance and enjoys hobbies that inherently require sitting in one place and concentrating for an extended period of time. The ALJ recognized this fact, and further discounted Plaintiff's subjective complaints by reference to objective medical records and testing, none of which show that Plaintiff's limitations preclude him from working in a manner consistent with his RFC. The ALJ also noted Plaintiff's 20-year history of symptoms while working and the fact that he smoked one pack of cigarettes a day for 30 years.  All of these factors were properly considered by the ALJ when assessing Plaintiff's credibility, and Plaintiff points to no evidence of record that overwhelms the ALJ's findings.

### C) The ALJ's omission of a function-by-function analysis of Plaintiff's work related abilities was harmless.

Plaintiff argues that the ALJ failed to conduct a function-by-function assessment of his abilities to sit, stand, walk, lift, carry push and pull as required by SSR 96-8p. *Doc. 18* at 8-9. According to Plaintiff, this error is reversible because the function reports submitted by Plaintiff and his mother "note limitations on squatting, bending, standing, reaching, walking, kneeling, and talking[.]" *Id.* at 10.

In the past, strict adherence to SSR 96-8p's requirement of a function-by-function analysis in determining the RFC provided the reviewing court with a well-established and straightforward method for assessing whether the RFC was based on substantial

evidence and if it supported the ALJ's conclusions as to the level of work, if any, the claimant could undertake. "The concern [was] that, without a function-by-function analysis, an ALJ 'may . . . overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do.'" SSR 96–8p, 1996 WL 374184, at *4. Thus, in the absence of a mandatory and proper function-by-function analysis, the case was automatically remanded for the ALJ to perform that necessary assessment. *See, e.g.*, *Southard v. Barnhart*, 72 Fed. Appx. 781, 784 (10th Cir. 2003) (unpublished).

However, the Tenth Circuit recently held that omission of the formulaic analysis set forth in SSR 96-8p can be harmless provided that the ALJ's decision discusses and addresses any pertinent limitations and is otherwise supported by substantial evidence. *Hendron*, 767 F.3d at 954-57 ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal."). This new "harmlessness" exception now requires the reviewing Court to engage in the arduous and time-consuming task of combing the ALJ decision and evidence of record to assure that no limitations have been omitted from the RFC. However well-intentioned, the *Hendron* exception shifts the ALJ's duty to support her conclusions with a specific and established analysis to the district court who must now assure that all relevant limitations were addressed. Having conducted this extensive review as I must, the Court concludes that any structural error in the analysis in this case is harmless. *Id.* at 957.

"RFC determines a work capability that is exertionally sufficient to allow performance of at least substantially all of the activities of work at a particular level." SSR 83-10, 1983 WL 31251 at *2. It is a reflection of "the maximum amount of each work-related activity the individual can perform," and, in reaching it, an ALJ must describe the "individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, *7. Ordinarily, an ALJ may not simply express an RFC in terms of the exertional categories of "sedentary," "light," "medium" or "heavy" levels of work. Rather, in order to insure accuracy, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," including the "seven strength demands" of sitting, standing, walking, lifting, carrying, pushing and pulling. *Id.* at *1, 5; (citing 20 C.F.R. § 404.1545; 10 C.F.R. § 416.945). However, the Tenth Circuit has made clear that an ALJ's omission of this formulaic analysis is harmless so long as it is apparent that the ALJ considered the applicable strength demands. *See Hendron* 767 F.3d at 957.

In *Hendron*, the plaintiff argued that the ALJ's omission of the function-by-function assessment resulted in his omission of her inability to sit for six hours during an eight-hour workday when formulating her RFC. *Id.* at 956. Had the ALJ engaged in the proper analysis, she argued, he would have not found that she retained the capacity to perform a full-range of sedentary work. *Id.* The Tenth Circuit acknowledged the importance of a formal articulation of an applicant's strength demands in some cases. *Id.* (discussing SSR 96-8p, 1996 WL 374184 at *3). The court concluded, however, that the omission was harmless in Ms. Hendron's case because the ALJ considered the

medical evidence she relied on and discounted it, noting that the records revealed that the plaintiff reported being "pain free" during the relevant time period. *Id.* at 957. The Tenth Circuit compared the ALJ's findings with the regulatory definition of sedentary work and concluded that the ALJ's RFC analysis sufficiently captured the plaintiff's ability to sit, because, although it was presented in narrative form, it demonstrated that "the ALJ did not overlook [the plaintiff's] problems with sitting; [but, rather] he found that the evidence did not support any limitation on her ability to sit. . . ." *Id.*

The ALJ's analysis in this case is analogous. As noted above, the ALJ exhaustively discussed and assessed Plaintiff's testimony, function reports, and medical records, and she ultimately concluded that Plaintiff can perform sedentary work with restrictions. The ALJ's discussion of Plaintiff's medical records included those of State agency medical consultant Dr. Green, who offered opinions on Plaintiff's abilities to perform all of the strength demands he now complains the ALJ ignored. *Compare AR* at 71 *with AR* at 114-15. As such, the ALJ's narrative discussion of Plaintiff's RFC is consistent with that at issue in *Hendron*. And, as in *Hendron*, Plaintiff points to no medical evidence showing that his impairments preclude him from working consistent with the RFC the ALJ formulated. This lack of medical evidence is fatal to his claim. *Wall*, 561 F.3d at 1067-8;[2] *Rose v. Colvin*, 634 F. App'x 632, 637 (10th Cir. 2015)

---

[2] In *Wall*, the plaintiff argued that the ALJ failed to consider her fatigue and migraine headache impairments when formulating her RFC. *Id.* at 1067-8. The Tenth Circuit rejected this argument as to the plaintiff's migraines because they were never diagnosed by a medical provider. *Id.* at 1067. The ALJ's decision to omit the plaintiff's fatigue impairment was also affirmed because there was little evidence in the record to support it other than the claimant's own subjective complaints. *Id.* at 1068. The Tenth Circuit was confident in its decision to affirm because the ALJ "discussed Plaintiff's subjective complaints . . . in some detail" and "thoroughly discussed" evidence which supported the inference that the plaintiff may have exaggerated the extent of her impairments. *Id.* In light of this evidence, the Tenth Circuit concluded that the plaintiff's

(unpublished) ("Ms. Rose points to no medical evidence indicating that her obesity resulted in functional limitations. . . . Therefore, the factual record does not support Ms. Rose's position that her obesity . . . precludes her from performing a limited range of sedentary work.") (citation omitted).

### D) The ALJ properly concluded that Plaintiff can perform other work in the national economy.

Finally, Plaintiff argues that the ALJ erred at Step Five in determining that he can complete work in the national economy. The ALJ posed two hypotheticals to the vocational expert in this case that are identical except that the second assumes an individual who will need unscheduled breaks throughout the work day. *AR* at 96-98. While there are a significant number of jobs that an individual in the first hypothetical can perform, according to the vocational expert, this additional limitation in the second would preclude all work. *Id.* (opining that frequent breaks throughout the work day would not be tolerated in a competitive environment). Plaintiff argues that this additional unscheduled breaks limitation should have been included in his RFC and he should have accordingly been found disabled.

By positing her second hypothetical to the vocational expert, the ALJ was not thereby bound to accept limitations she found to be unsupported in Plaintiff's RFC. A similar argument was rejected by the Tenth Circuit in *Ruth v. Astrue*, 369 F. App'x 929 (10th Cir. 2010) (unpublished). In *Ruth*, the claimant argued that the ALJ was required to include all limitations set forth in her hypotheticals to the ALJ in her RFC. The Tenth Circuit disagreed.

---

subjective complaints and testimony were "not significantly probative" compared with the "scant objective evidence in the record." *Id.*

> An ALJ is not bound by VE testimony in response to a hypothetical that fails to set forth only those impairments the ALJ has accepted as true. Thus, we fail to see how an ALJ could be bound by the hypothetical itself. By posing a particular hypothetical, an ALJ does not confine herself to making an RFC determination mirroring the hypothetical limitations.

*Id.* at 931. This rationale applies here. Just because the ALJ included an unscheduled breaks limitation in her hypothetical to the vocational expert does not mean that she was required to include that same limitation in her formulation of Plaintiff's RFC. As the Tenth Circuit recognized, "[i]ndeed, VE testimony has no bearing on the RFC determination, which must be based on substantial evidence regarding the nature and extent of the claimant's limitations as a result of her impairments." *Id.* (citation omitted).

While Plaintiff argues that his testimony and function reports support a frequent breaks limitation on his ability to work, the ALJ did not did not agree. As addressed above, the ALJ discredited Plaintiff's subjective complaints after an exhaustive review of Plaintiff's testimony, function reports, and medical evidence of record. Plaintiff has pointed to no objective evidence that overwhelms the ALJ's ultimate finding that an unscheduled breaks restriction is not supported by the record. As such, the Court will not disturb the ALJ's RFC determination.

## IV.   Conclusion

Plaintiff has failed to demonstrate that the ALJ committed reversible error in this case.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion to remand *(Doc. 22)* is **denied**.

_____

UNITED STATES CHIEF MAGISTRATE JUDGE